# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

DWAYNE D. JOHNSON, DANIEL R. McBRIDE,
DAVID L. MILLER, et al.,
        Plaintiffs,

    v.                                           Case No. 05-C-1058

MATTHEW J. FRANK, PHILLIP KINGSTON,
STEVEN SCHUELER, and JOHN DOES 1-100,
        Defendants.

---

## DECISION AND ORDER

Plaintiffs Dwayne D. Johnson, Daniel R. McBride and David L. Miller filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging various constitutional violations. This matter comes before me upon plaintiffs' petitions to proceed in forma pauperis. In addition, the following motions are currently pending: 1) plaintiffs' motion for appointment of counsel; 2) plaintiff Johnson's motion to certify a class; 3) plaintiff Miller's two motions for injunctive relief; and 4) plaintiff McBride's motion for extra law library time.

### I. IFP REQUESTS AND PLRA SCREENING

**A.**     **Motion to Proceed In Forma Pauperis**

Pursuant to 28 U.S.C. § 1915(b)(1), each plaintiff is required to pay the statutory filing fee of $250.00 for this action.[1] If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma

---

[1] Plaintiffs filed their complaint prior to April 9, 2006, when the filing fee for civil actions brought in the Eastern District of Wisconsin increased from $250 to $350.

pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, each plaintiff filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of the complaint. In accordance with this court's order of October 12, 2005, plaintiffs have paid the following initial partial filing fees: 1) Johnson paid $.14; 2) McBride paid $.05;[2] and 3) Miller paid $1.98. Hence, they will be permitted to proceed in forma pauperis. The balances of their filing fees will be collected as set forth below.

**B.    Plaintiff Miller's Three Strikes**

At the outset, I note that plaintiff Miller has incurred "three strikes" under 28 U.S.C. § 1915(g). Under the Prison Litigation Reform Act of 1996 (PLRA), a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

---

[2]By order of October 12, 2005, McBride was assessed an initial partial filing fee of $1.64. Subsequently, he requested that $1.64 be removed from his prison release account. However, McBride only had $.05 in his release account. Thus, on December 1, 2005, I held that his payment of $.05 would be considered full payment of his initial partial filing fee.

2

28 U.S.C. § 1915(g). When determining whether a prison has acquired three "strikes" under § 1915(g), courts must consider prisoner actions dismissed on any of the three enumerated grounds both before and after the enactment of the PLRA. Evans v. Ill. Dep't of Corrs., 150 F.3d 810, 811 (7th Cir. 1998).

Miller has accumulated strikes as follows: 1) Miller v. Belgado, et al., Case No. 01-C-887 (E.D. Wis.), dismissed for failure to state a claim on Jan. 22, 2002; 2) Miller v. ABC Inc., et al., Case No. 02-C-111 (E.D. Wis.), dismissed for failure to state a claim on Jan. 31, 2002; and 3) Miller v. Doe, et al., Case No. 05-C-185 (E.D. Wis.), dismissed as frivolous on May 31, 2005.

Section 1915(g) prohibits a plaintiff who has incurred three "strikes" from filing actions unless the plaintiff demonstrates that he is in "imminent danger." "The 'imminent danger' exception to § 1915(g)'s 'three strikes' rule is available 'for genuine emergencies,' where 'time is pressing' and the 'threat . . . real and proximate." Heimermann v. Litscher, 337 F.3d 781, 782 (7th Cir. 2003). Harm that is occurring at the time the complaint is filed meets the imminent danger requirement. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003).

Miller alleges that he is under imminent danger of serious physical injury. (See Miller's November 3, 2005 "Emergency Motion for Injunction" [Miller's Nov. 3, 2005 Mot.].) Miller asserts that "he is internally bleeding and has a piece of metal lodge (sic) in [his] upper left intestine." (Miller's Nov. 3, 2005 Mot. at 1). Furthermore, "the metal piece is poking him in whatever position he is in or when food moves through [his] system," and if "the metal piece pierces the intestine in this area when he had already had a hernia plaintiff will die." (Id.) Based on this, I find that Miller has alleged facts sufficient to satisfy the

3

"imminent danger" exception. Accordingly, he will be permitted to proceed in forma pauperis.

**C.     Screening**

I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations

4

of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Finally, Fed. R. Civ. P. 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley, 355 U.S. at 47).

Plaintiffs are currently incarcerated at Waupun Correctional Institution (WCI). The three named defendants, Matthew Frank, Phillip Kingston and Steven Schueler, are employees of the Wisconsin Department of Corrections (DOC). (Compl. at 2). In addition, there are one hundred unnamed defendants, referred to as "John Does 1-100." (Id. at 1.) At this point, It is unclear whether the unnamed defendants are also DOC employees. (See id.)

Plaintiffs contend that defendants have violated their rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA). Contrary to Rule 8 of the Federal Rules of Civil Procedure, which requires that the complaint contain "a short and plain statement of the

5

claim," plaintiffs have filed a very lengthy complaint. Indeed, plaintiff Johnson's affidavit itself is over 200 pages long. The Seventh Circuit has noted that district courts should "not have to read and decipher tomes disguised as pleadings." Lindell v. Houser, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006) (stating that plaintiff's "blunderbuss" complaint, which named more than 40 prison officials and weighed in at 55 pages, was "probably dismissible for not being simple, concise and direct").

Furthermore, the complaint is deficient because it fails to identify the responsible defendants. For example, plaintiff Johnson asserts:[3]

> [Johnson] has been subjected to denial of essential prescribed medications by correctional officers without a doctor's permission. Correctional officers at Waupun are allowed to pass out prescription medication to prisoners even though they are unqualified to do so.

(Aff. of Dwayne D. Johnson at 3.)

McBride submits:

There are times when I went to indoor rec that I was forced to be stripped in the strip case before I went to recreation.

Showers are two (2) times a weeks and I have to share use the finger or nose clippers while you take a shower and showers stay on for about 7 ½ minutes.

(Aff. of Daniel R. McBride at 2.)

And Miller avers that:

[he] was thrown in a (sic) isolation cell naked given seg. loaf and no attempt was made at all to remove me from the environment causing the distress, thus deliberately indifferent to the fact my mental health symptoms were exacerbating and a more serious mental health illness could result.

---

[3]For reasons that are unclear, plaintiffs have submitted both a verified complaint and personal affidavits. Hence, I will consider all documents when screening plaintiffs' claims pursuant to 28 U.S.C. § 1915A.

6

(Aff. of David L. Miller at 2.)

In light of the fact that there are over 100 defendants, it is impossible to determine what defendants were involved in the events giving rise to the complaint. This type of pleading fails to provide defendants fair notice of the claims against them. See Lindell v. Doyle, No. 02-C-473, U.S. Dist. LEXIS 1571, at *7 (W.D. Wis. Feb. 2, 2004) (stating that failure to make specific allegations against 79 defendants "robs" defendants of notice required under Fed. R. Civ. P. 8).

The complaint also fails to state facts showing that plaintiffs themselves were harmed by the alleged constitutional violations. For example, plaintiffs contend that, "[e]xcessive force is an every day occurrence in HSC." (Compl. at 11.) Plaintiffs also aver that "a prisoner may spend months years subjected to the conditions described in this complaint and may not be released from HSC until their mandatory or discharged released date from prison." (Id. at 4.) However, the only issue before this court is whether defendants' policies and/or actions violated the constitutional rights of these three plaintiffs. That is to say, plaintiffs lack standing to challenge defendants' actions as they have affected other WCI inmates. Shimer v. Washington, 100 F.3d 506, 508 (7th Cir. 1996)(stating that a plaintiff may only assert his own legal rights, not the legal rights of other inmates).

I note that plaintiffs have indicated a desire to represent a class of similarly situated inmates. However, under Fed. R. Civ. P. 23(a)(4), plaintiffs must be able to provide the class with adequate representation. Because of this requirement, courts have repeatedly declined to allow pro se prisoners to represent a class. See, e.g., Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that it would be plain error to permit

7

imprisoned pro se litigant to represent his fellow inmates in a class action); Caputo v. Fauver, 800 F. Supp. 168, 169-70 (D.N.J. 1992) ("Every court that has considered the issue has held that a prisoner proceeding pro se is inadequate to represent the interests of his fellow inmates in a class action."). Here, plaintiffs have given no indication that they possess the ability to adequately represent the other WCI inmates as a class. Accordingly, plaintiffs' motion to certify a class is denied.[4]

In light of the foregoing, plaintiffs may file an amended complaint within 30 days if they can cure the defects in the complaint by: 1) identifying the relevant defendants for each allegation; 2) citing specific examples of injury plaintiffs have experienced; and 3) removing all references to a class action. Plaintiffs are admonished that the complaint should include only a short and plain statement of their claims. Plaintiffs are hereby advised that they have until **July 15, 2006** to file an amended complaint. If plaintiffs fail to file their amended complaint on or before July 15, 2006, this action maybe dismissed pursuant to Civil L.R. 41.3 (E.D. Wis.) and Fed. R. Civ. P. 41(b), copies of which are enclosed.

Plaintiffs are also advised that the amended complaint supercedes the prior complaint, and the amended complaint must be complete in itself without reference to the

---

[4]Plaintiffs have included with the complaint the affidavits of five fellow WCI inmates. However, a review of the docket in this case reveals that none of these individuals are named as plaintiffs. Although one individual, Jeffrey E. Hibbard, has signed the complaint (Complaint at 21), Hibbard has not paid the filing fee for bringing this action, nor has he requested leave to proceed in forma pauperis. See 28 U.S.C. § 1915(b)(1)(prisoner plaintiff is required to pay the full $250 statutory filing fee in this action even though he is proceeding in forma pauperis). Therefore, Hibbard is not a party to this action and I will not consider his affidavit at this time. If Hibbard and the other individuals who have submitted affidavits wish to sue defendants, they may do so by filing a separate § 1983 civil rights claim.

8

prior complaint. Accordingly, any matters not set forth in the amended complaint are, in effect, withdrawn. Once filed, the amended complaint will be screened pursuant to 28 U.S.C. § 1915A.

## II. ADDITIONAL MOTIONS

### A. Appointment of Counsel

Plaintiffs have moved for appointment of counsel. Although civil litigants do not have a constitutional or statutory right to counsel, this court has the discretion to request attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). Luttrell v. Nickel, 129 F.3d 933, 936 (7th Cir. 1997) (citing Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir. 1995)). "As a threshold matter, litigants must make a reasonable attempt to secure private counsel." Zarnes, 64 F.3d at 288. Once this threshold burden has been met, the court must address the following question: given the difficulty of the case, does this plaintiff appear to be competent to try the case him or herself and, if not, would the presence of counsel likely make a difference in the outcome of the case. Id. (citing Farmer v. Haas, 990 F.2d 319, 322 (7th Cir. 1993)).

In this case, plaintiffs have provided evidence that they have attempted to obtain legal counsel on their own. However, the complaint has not been screened pursuant to 28 U.S.C. § 1915A, and thus it is not clear whether the issues in this case are so complex as to necessitate the assistance of counsel. Moreover, to this date, plaintiffs' filings indicate that they are capable of litigating this case themselves. Accordingly, plaintiffs' motion for appointment of counsel is denied without prejudice.

9

## B. Miller's Motions for Preliminary Injunction

On November 3, 2005, Miller filed an "Emergency Motion for Order of Injunction," requesting transfer to an outside hospital for treatment. In support of his motion, Miller asserts that he is internally bleeding and that he has a piece of metal lodged in his upper intestine. On November 23, 2005, Miller filed a "Motion for Injunction/TRO/RO," claiming that defendant Kingston has prevented Miller's "motions for injunctions" from being sent to the court. (Miller's November 23, 2005 "Motion for Injunction/TRO/RO" at 1.) In addition, Miller challenges the issuance of two conduct reports that resulted in a sentence of "isolated segregation." (Id. at 5.)

When considering whether to grant a preliminary injunction, the court must first consider "whether the moving party has demonstrated: 1) a reasonable likelihood of success on the merits, and 2) no adequate remedy at law and irreparable harm if preliminary relief is denied." Aircraft Owners & Pilots Ass'n v. Hinson, 102 F.3d 1421, 1424-25 (7th Cir. 1996) (internal citations omitted). If the moving party has demonstrated those items to the satisfaction of the court, then it must then look at: 3) the irreparable harm the non-moving party will suffer if the injunction is granted balanced against the irreparable harm the moving party will suffer if the injunction is denied, and 4) the public interest, i.e., the effect that granting or denying the injunction will have on non-parties." Id. The Seventh Circuit has adopted a sliding scale approach where the greater the movant's chances of success on the merits, the less he must show that the balance of hardships tips in his favor. Ty, Inc. v. Jones Group, 237 F.3d 891, 895-96 (7th Cir. 2001).

I will address plaintiff Millers' motions in the order of their arrival.

10

### 1. November 3, 2005 Motion

In his first motion, Miller alleges that he is "internally bleeding and has a piece of metal lodged in upper left intestine." (Miller's Nov. 3, 2005 Mot. at 1). In addition, he contends that "the metal piece is poking him in whatever position he is in or when food moves through [his] system." (Id.) For relief, he requests a transfer to an "outside hospital for immediate surjury (sic)." (Id.)

Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, and thus is proscribed by the Eighth Amendment. Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). This is the case "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Estelle, 429 U.S. at104-05; Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000). A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; see also Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998) (stating that prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner") Negligence or even gross negligence is not a sufficient

11

basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001) (citing Farmer, 511 U.S. at 840-42).

Accepting Miller's allegations as true, he has established a serious medical need. See Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (stating that a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"). However, Miller gives no indication that he has alerted defendants to his medical condition. Specifically, Miller has not made any allegation that defendants are aware that he has a piece of metal lodged inside him, nor does he claim that they have failed to provide him adequate medical treatment. Farmer, 511 U.S. at 834 (1994)(to establish liability under the Eighth Amendment, a prisoner must show that the official "knows of and disregards an excessive risk to inmate health or safety"). Furthermore, to the extent that Miller is unsatisfied with the medical treatment he has received, his claim amounts to nothing more than disagreement about proper medical treatment. It is well established that disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment deliberate indifference claim. Ciarpaglini, 352 F.3d at 331. For these reasons, Miller has not shown a likelihood of prevailing on the merits of this claim. Furthermore, Miller has not alleged that he lacks an adequate remedy at law. Indeed, as discussed herein, Miller has been granted leave to file an amended complaint wherein he may assert this claim. Accordingly, Miller's November 3, 2005 motion for a emergency order of injunctive relief is denied.

12

### 2. Miller's November 23, 2005 Motion

In plaintiff Miller's second request for injunctive relief, he claims that defendant Kingston has not mailed his motions for injunctive relief, which I will construe as a claim that defendant Kingston is interfering with his constitutional right of access to the courts. This right "requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 821, 828 (1977). To establish a denial of his constitutional right an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. Lewis v. Casey, 518 U.S. 343, 351 (1996). Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. Id. at 353 n.4.

Here, Miller asserts that Kingston has failed to mail his motions for injunctive relief. However, a review of the docket in this case reveals that the court has received two of Miller's motions for injunctive relief: one on November 3, 2005, and one on November 23, 2005. Furthermore, Miller does not indicate that the legal issues raised in the confiscated motions have not already been presented to the court. That is to say, Miller has not demonstrated that he was prevented from pursuing his legal claims. Therefore, it is unlikely that Miller would prevail on his access the courts claim. Furthermore, Miller has not established that he lacks an available remedy at law, nor has he demonstrated that he will suffer irreparable harm if his request is denied.

13

Next, Miller contends that he was sentenced to segregation without due process of law. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). However, in the prison context, a liberty interest exists only when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. Id. at 485; see also Thomas v. Ramos, 130 F.3d 754, 760-62 (7th Cir. 1998) (stating that a prisoner has no liberty interest in remaining in the general prison population). In this case, Miller has presented no facts indicating that his segregation sentence rose to the level of an atypical or significant deprivation. Accordingly, Miller has failed to demonstrate a likelihood of prevailing on the merits of his due process claim. Moreover, Miller has not shown that he lacks an adequate remedy at law, or that he stands to suffer irreparable harm if his motion is denied. For the foregoing reasons, Miller's November 23, 2005 motion for injunctive relief is denied.

**C.     Plaintiff's Johnson's Requests**

In several letters to the court, Johnson has requested the name of defendants' attorney, a copy of Freeman v. Berge, Case No. 03-C-21 (W.D. Wis. May 16, 2005), return of confiscated legal materials, return of documents he sent to the court, and a copy of the form used to file complaints against the court. However, on March 14, 2006, Johnson filed a letter with the court requesting that he be dismissed from this action.

Fed. R. Civ. P. 41(a)(1) allows a plaintiff to voluntarily dismiss an action without order of court by filing notice of dismissal at any time before service of the adverse party of an answer or of a motion for summary judgment, whichever first occurs.

Here, defendants have not yet been served with a copy of the complaint and have not answered. Accordingly, I find that Johnson may be voluntarily dismissed without prejudice. In his March 14, 2006 letter, Johnson also requested copies of "all his documents" he has filed "in this case." (Johnson's Letter of Mar.14, 2006 at 2.) As grounds for his request, Johnson claims that defendants have seized his legal materials. I construe Johnson's letter as a request for Withdrawal of Materials in Court Files under Gen. L. R. 79.3 (E.D. Wis.). The Local Rules provide that no exhibit belonging in the case file may be withdrawn by any person without an order of the court. See Gen. L. R. 79.3.

A review of the docket in this case reveals that on October 6, 2005, Johnson filed a complaint, an affidavit and a document entitled "Exhaustion of Administrative Remedies Supporting Affidavit's (sic) and Declaration." (Docs. #1 & 2.)[5] I note that it is not standard practice to provide copies free of charge to parties in an action, whether they are indigent inmates or not. To this extent, Johnson was advised on February 2, 2006, that he may obtain copies of any documents he has filed at the rate of $.25 per page. However, in this case, I will make a rare exception and provide Johnson with the copies he has requested. Hence, his request for copies of docket numbers 1 and 2 shall be granted.

---

[5]Plaintiff also filed documents with the court on January 3, 2006 (Docs. # 21, 22, 23, 24), February 1, 2006 (Doc. #26), February 2, 2006 (Doc. #27), February 14, 2006 (Docs. #28, 29, 30, 31), March 10, 2006 (Doc. # 34), and March 14, 2006 (Doc. #35). However, Johnson does not indicate that he desires copies of these filings.

15

Finally, Johnson has requested a copy of the form used to file a complaint with "whom oversees the judges in the Eastern District Courts in Wisconsin." (Id. at 2.) Johnson is advised to contact the Seventh Circuit Court of Appeals. Johnson's other requests are denied as moot in light of the dismissal.

**D.     Plaintiff McBride's Motion for Library Time**

On January 24, 2006, plaintiff McBride filed a "Motion for Extra Law Library Time." In support of his proposition, he states that he is only able "to use the law library for 4 hours every 2-3 weeks." (McBride's Jan. 24, 2006 "Motion for Extra Law Library Time" at 1.) Furthermore, he asserts that "there are few books to read," and he has a "hard time"using the computer for research. (Id.)

I construe McBride's request as a motion for injunctive relief. Cases dealing with access to prison law libraries "equate access to prison law libraries with the degree of access to the courts which prisoner have, heretofore, been constitutionally guaranteed." Hossman v. Spradlin, 812 F.2d 1019, 1021 (7th Cir. 1987). Prisoners are guaranteed "'meaningful' access to courts," which requires "that they receive that quantum of access to prison libraries–not total or unlimited access-which will enable them to research the law and determine what facts may be necessary to state a cause of action." Id. (citing Campbell v. Miller, 787 F.2d 217, 226 n.15 (7th Cir. 1986)). However, "inconvenient or even highly restrictive regulations governing the use of a prison law library" may not deny a prisoner of meaningful access to the courts. Hossman, 812 F.2d at 1021.

Here, McBride has alleged that he has suffered nothing more than inconvenience performing his legal research. As noted, inconvenience alone does not rise to a

16

constitutional deficiency. Campbell, 787 F.2d at 229. In addition, McBride has not shown that he has suffered any injury as a result of his limited library access. See Lewis, 518 U.S. at 353 n.4 (holding that even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation). Accordingly, McBride has failed to demonstrate a likelihood of prevailing on the merits of an access to the courts claim. Furthermore, McBride has not demonstrated that he lacks an adequate remedy at law, nor does he allege that he will suffer irreparable harm if his motion for injunctive relief is not granted. For the foregoing reasons, McBride's motion is denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the plaintiff Johnson's request to proceed in forma pauperis (Doc. # 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff McBride's request to proceed in forma pauperis (Doc. #4) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff Miller's request to proceed in forma pauperis (Doc. #5) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiffs may file an amended complaint by **July 15, 2006.** Their failure to file their amended complaint on or before **July 15, 2006** may result in dismissal of this action pursuant to Civil L.R. 41.3 and Fed. R. Civ. P. 41(b), copies of which are enclosed.

**IT IS FURTHER ORDERED** that plaintiff Miller's "Emergency Motion for Injunction" (Doc. #12) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff Miller's "Motion for Injunction/TRO/RO" (Doc. #18) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' motion to certify class (Doc. #22) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff McBride's "Motion for Extra Law Library Time" (Doc. #25) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' motion to appoint counsel (Doc. #33) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff Johnson is **DISMISSED** from this action without prejudice and his pending motions and requests (Doc. 24, 26, 30) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court provide Johnson with copies of Dockets # 1 & 2.

**FINALLY, IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff Johnson's prison trust account the $249.86 balance of the filing fee, from plaintiff McBride's prison trust account the $249.95 balance of the filing fee, and from plaintiff Miller's prison trust account the $248.02 balance of the filing fee by collecting monthly payments from plaintiffs' prison trust accounts in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be

clearly identified by the case name and number assigned to this action.

Dated at Milwaukee, Wisconsin, this 15 day of June, 2006.

/s_____
LYNN ADELMAN
District Judge

**Civil L.R. 41.3**

**Dismissal for Lack of Diligence**.

Whenever it appears to the Court that the plaintiff is not diligently prosecuting the action, the Court may enter an order of dismissal with or without prejudice. Any affected party can petition for reinstatement of the action within 20 days.

**Fed. R. Civ. P. 41(b)**

**Involuntary Dismissal:  Effect Thereof.**

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.  Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision, and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.